**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| GREAT HARVEST FRANCHISING, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> CASSIE WISTE, KNEADING FOR THE PEOPLE, LLC, and SLICED LLC, d/b/a SLICED BAKESHOP AND LUNCHEONETTE, <br><br> Defendants. | CV 26-13-BU-WWM <br><br><br> FINAL JUDGMENT AND PERMANENT RESTRAINING ORDER |

Before the Court is the parties' Joint Motion for Final Judgment and

Permanent Restraining Order. (Doc. 23). On June 30, 2015, Great Harvest entered

into the Great Harvest Franchise Agreement ("Franchise Agreement") with Susan

D. Bates ("Ms. Bates"), the owner of S.D.B. Bread Business, LLC ("S.D.B."). By

a March 7, 2022 Assignment and Assumption Agreement, Great Harvest, S.D.B.,

and Kneading For the People, LLC ("Kneading"), through its owner, Cassie Wiste

("Ms. Wiste"), entered into an Assignment and Assumption Agreement, whereby

S.D.B. assigned, and Kneading assumed, the Franchise Agreement, and all rights

and obligations contained therein. In the March 7, 2022 Assignment and

Assumption Agreement, Ms. Wiste, as Kneading's owner, agreed to be bound by

the provisions of the Franchise Agreement, and be subject to all of the pre- and post-expiration obligations. Renewal of the Franchise Agreement by Ms. Wiste and Kneading was due on June 30, 2025. In order to give Great Harvest, Ms. Wiste, and Kneading ample opportunity to consider a renewal, Great Harvest, Ms. Wiste, and Kneading mutually agreed to an extension of the Franchise Agreement until October 24, 2025.

On October 16, 2025, Ms. Witse and Kneading informed Great Harvest that they did not intend to renew the Franchise Agreement. Great Harvest, Ms. Wiste, and Kneading agreed to extend the Franchise Agreement until December 31, 2025. The Franchise Agreement expired on December 31, 2025. On January 1, 2026, Ms. Wiste began operating her new business, Sliced, in the same location as Kneading's Great Harvest franchise, and offering substantially the same, if not an identical, menu as Ms. Wiste and Kneading offered when Kneading was a Great Harvest franchisee.

After the expiration of the Franchise Agreement, a dispute arose related to Defendants' continued use of Great Harvest's trade secrets, intellectual property, and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, and the Great Harvest System after the end of the franchise relationship. A dispute also arose regarding Ms. Wiste and Kneading's alleged failure to adhere to and abide by the post-expiration obligations

2

as set forth in the Franchise Agreement. On February 17, 2026, Great Harvest filed its Verified Complaint. (Doc. 1).

The Parties have agreed to the entry of a Final Judgment and Permanent Restraining Order as set forth herein. Defendants voluntarily consent to the Permanent Restraining Order serving as a Final Judgment and the end of litigation without further notice. Defendants waive any right they may have to appeal from this Final Judgment and Permanent Restraining Order. Defendants agree that this Court shall retain jurisdiction for the purpose of implementing and enforcing this Final Judgment and Permanent Restraining Order. For good cause shown,

**IT IS HEREBY ORDERED** that the Parties' Joint Motion for Final Judgment and Permanent Restraining Order (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1.     Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from using Great Harvest's trademarks, copyrights, trade secrets, intellectual property, and confidential information about its recipes, business and advertising methods, market studies, marketing techniques, or the Great Harvest System at the Bread Company ("Great Harvest System"). The Great Harvest System includes, but is not limited to:

> all trademarks, trade secrets, signs, symbols, copyright materials and associated trade slogans and any proprietary aspect of the operation of Great

3

Harvest, including: all recipes and their related measurements; all bread making processes, techniques, skills, temperatures, and timing; all baking forms and systems; all details of Great Harvest bread making theory or practice, oven systems, ingredient standards, wheat standards, ingredient supplier lists, wheat suppliers, equipment standards, special use of equipment not commonly known outside Great Harvest, and equipment supplier list; all details of Great Harvest's unique Bread Company management theories and practices, training methods, and Bread Company promotion training methods; all Bread Company management forms and systems and build-out specifications; all details of Great Harvest's location hunting theory or practice, location search information, and tracking information and systems; all details of Great Harvest's unique franchising theories and practices; all secrets for achieving high Gross Sales in new Bread Companies; all proprietary aspects of our sandwich and coffee programs; all proprietary newsletters, audio/visual training tools, Breadboard contents, the Confidential Start-up Kit, and First Year Guidelines; the candidate list, all candidate information, and all proprietary internal personnel practices; and any other information or materials arising from Great Harvest related to the art of bread making, the operation of a Great Harvest bread company, the internal operation of Great Harvest Franchising, LLC, or the training and franchising of the Great Harvest System to Great Harvest bread company owners;

2.     Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from using any menu items, recipes, advertising, marketing, and/or promotions that were disapproved by Great Harvest;

3.     Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from referencing, directly or indirectly, their prior affiliation and/or franchise relationship with Great Harvest;

4

4.     Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from using and/or publicizing any recipes, procedures, ideas, or concepts used or developed during the franchise period of June 30, 2015, through December 31, 2025, whether provided by Great Harvest, developed or discovered by Defendants, or from any other source;

5.     For the two years following the date of the entry of this Final Judgment and Permanent Restraining Order, Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be enjoined from making, selling, donating, and/or otherwise making available to the public any bread, scratch or homemade baked goods, or any menu item and/or product whose recipe has not been pre-approved by Great Harvest. Notice of a request for approval of a recipe by Great Harvest shall be provided as provided for in Section 11 of the Settlement Agreement.  Great Harvest agrees to not unreasonably delay its decision regarding the approval of any recipe.  If Great Harvest does not provide its approval or disapproval of a submitted recipe within ten business days of Great Harvest receiving the request pursuant to the notice requirements provided for in Section 11 of the Settlement Agreement, then Great Harvest's approval shall be deemed automatically given.  The ten business days begins on the day that Great Harvest receives the request sent pursuant to the

notice requirements provided for in Section 11 of the Settlement Agreement. Great Harvest agrees to review each request in good faith. Any disapproval shall be accompanied by the reason(s) for disapproval with a reasonable degree of specificity which would inform Defendants of whether there are possible reasonable and commercially viable changes that can be made to the recipe that may allow it to be accepted, if such changes can be reasonably identified. For any disapproved menu item and/or recipe, Defendants may submit a request for re-evaluation due to changes made to the recipe, and such request for re-evaluation shall be subject to this provision. Great Harvest, having complied with this provision on re-evaluation of any resubmitted individual menu item and/or recipe, may put reasonable limits on the number of times it will re-evaluate any individually submitted menu item and/or recipe that has been submitted for re-evaluation for approval;

6. Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from violating any of the post-expiration requirements as set forth in the Franchise Agreement;

7. Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from making, selling, donating, and/or otherwise making available to the public

6

any menu items and/or products substantially similar to and/or exactly the same as any menu item and/or product made, sold, donated, and/or otherwise made available to the public by Great Harvest;

8.     For the two years following the date of the entry of the Final Judgment and Permanent Restraining Order, Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be enjoined from using any logos, business names, menus, marketing, promotions, or advertising that have not been first pre-approved by Great Harvest. Notice of a request for approval of any logos, business names, menus, marketing, promotions, or advertising shall be provided as stated in Section 11 of the Settlement Agreement.  Great Harvest agrees to not unreasonably delay its approval of any logos, business names, menus, or advertising.  If Great Harvest does not provide its approval or disapproval of submitted logos, business names, menus, or advertising within ten business days of Great Harvest receiving the request pursuant to the notice requirements provided for in Section 11 of the Settlement Agreement, then Great Harvest's approval shall be deemed automatically given.  The ten business days begins on the day that Great Harvest receives the request sent pursuant to the notice requirements provided for in Section 11 of the Settlement Agreement.  Great Harvest agrees to review each request in good faith.  Any disapproval shall be accompanied by the reason(s) for

disapproval with a reasonable degree of specificity which would inform Defendants of whether there are possible reasonable and commercially viable changes that can be made to the submitted logos, business names, menus, marketing, promotions, or advertising that may allow them to be accepted, if such changes can be reasonably identified. Such reasonable changes may include, but are not limited to: color schemes, promotional language, images, and/or logos. For any disapproved logos, business names, menus, marketing, promotions, or advertising, Defendants may submit a request for re-evaluation due to changes made to the submitted logos, business names, menus, marketing, promotions, or advertising, and such request for reevaluation shall be subject to this provision. Great Harvest, having complied with this provision on re-evaluation of any resubmitted individual logos, business names, menus, marketing, promotions, or advertising, may put reasonable limits on the number of times it will re-evaluate any individually submitted logos, business names, menus, marketing, promotions, or advertising that have been submitted for re-evaluation for approval;

9.    For the two years following the date of entry of the Final Judgment and Permanent Restraining Order, Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, are ORDERED to submit to, and participate in, on-site audits and inspections by auditors and/or inspectors of Great Harvest's sole choosing to monitor for

compliance with Section 2(c) of the Settlement Agreement, the Franchise Agreement, and the Final Judgment and Permanent Restraining Order entered by the Court. Great Harvest agrees to provide Defendants with twenty-four hour written notice of onsite audits and inspections. Great Harvest's auditors and/or inspectors shall have total and unfettered access to any food-service entity Defendants own, operate, are affiliated with, are employed by, and/or otherwise control without any limitations. This includes, but is not limited to, the fact that Great Harvest's auditors and/or inspectors shall have no time limit placed on their inspection, shall be provided unfettered access to all business locations and social media, shall be provided with all advertising and marketing promotions and plans, shall be provided with all business records, and shall be provided with complete recipes for all menu items of any entity Defendants own, operate, are affiliated with, are employed by, and/or otherwise control. Defendants shall fully cooperate and comply with Great Harvest's auditors' and/or inspectors' requests and instructions during all inspections;

10.     Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, are ORDERED to immediately return all of Great Harvest's trade secrets, copyrighted materials, and confidential and proprietary information, and not retain any such copies; and

9

11.   Defendants, along with any entity they own, operate, are affiliated with, are employed by, and/or otherwise control, shall be permanently enjoined from operating, owning, affiliating with, consulting with, being employed by, or assisting any competing business that:

    a.   produces, sells, or has for sale more than four varieties of bread made with whole wheat flour on any given day;

    b.   targets and/or tracks temperatures of dough used in any multistage dough making process;

    c.   uses any forms or other methods of recording data in its business that function substantially the same as those used in a Great Harvest operation;

    d.   makes or sells products using fresh milled flour of any type; or

    e.   measures the internal temperature of baked breads;

    f.   uses any promotional campaigns, advertising, and/or marketing that Defendants, or their predecessor in interest used while a Great Harvest franchisee;

    g.   use any names or confusingly similar names to any Great Harvest product and/or menu item, even if the products differ and whether or not the names are trademarks of Great Harvest;

    h.   sells, donates, and/or otherwise provides to the public any menu item that's recipe is substantially similar and/or exactly the same as any menu item Defendants, or their predecessor in interest offered for sale or otherwise to the public when Defendants were a Great Harvest franchisee;

    i.   times the mixing process;

    j.   uses a multi-stage process of preparing doughs where the time from combining any ingredients together until the time when loaves are placed on the pan for baking is within 1.5 hours (longer or shorter) from the times you were using when you were Great Harvest franchisees; or maintains a store or website look or feel similar enough to Defendants' Great Harvest operation to be confusing to customers as to whether or not it is a part of, and/or otherwise affiliated with Great Harvest;

    k.   measures the internal temperature of baked breads;

    l.   uses the words Great or Harvest in its legal name or trade name;

    m.   utilizes any portion of the Great Harvest System; or

n.      represents itself as formerly or currently associated with Great Harvest.

12.     This Permanent Restraining Order shall bind the following who receive actual notice of it by personal service or otherwise: (a) Defendants; (b) Defendants' officers, agents, servants, employees, and attorneys; and (c) any entity Defendants own, operate, are affiliated with, are employed by, and/or otherwise control in relation to the activities described immediately above in paragraphs 1 through 11.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this action for the purpose of implementing and enforcing this Final Judgment and Permanent Restraining Order.

The Clerk of Court is directed to notify the parties of the making of this Order and close the case file.

DATED this 11th day of August, 2026.

_____
WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE

11